and Schneider v. Smith, and we recognize Mr. Eisenberg. May it please the Court, Ronald Eisenberg representing the District Attorney parties. I'd like to reserve five minutes for rebuttal. The issue presented in these appeals is whether prosecutors have immunity for acts relating to the custody of a material witness in a criminal case. The plaintiffs actually agree that prosecutors have absolute immunity for seeking a witness's custody or for not seeking the witness's release, but they argue that they can get past immunity by essentially subdividing that material witness function into small pieces and calling some of them administrative or ministerial and therefore not subject to prosecutorial immunity. That kind of approach is wrong under the law and would in fact undermine all prosecutorial immunity, including cases where courts have clearly held that there is such immunity. Now the plaintiff's position essentially here is that when a material witness was in custody, it was the prosecutor who had the duty to notify the court if the underlying case was continued or dismissed. And they say, well, that's just a notice duty. Anybody can do that. A clerk could do it. A high school intern could do it. It's not advocacy and therefore it's not protected by absolute immunity. But exactly the same thing could be said about just about any prosecutorial function. For example, when we decide to bring charges in a criminal case, we have to file a bill of information. We fill out forms. We have them delivered to the court. A clerk does it. When we provide discovery to the defense, we have to make Xeroxes. We have to mail a package. A clerk does it. If we want to present photographs and evidence in a trial, we may need to get them copied or enlarged. The guy at the right end down the street could do that. But you can't avoid prosecutorial immunity by focusing on the mechanics of the function and saying, well, we're only seeing suing for what the clerk did or didn't do or what a clerk could have done or should have done. And in fact, in this case, plaintiff's own allegations contradict their clerical claim. On the one hand, they say, well, this is just a technical menial function that anybody could have performed. But on the other hand, they say in their complaints and in their briefs that the prosecutors acted intentionally in order to prolong the custody of the witnesses. They say, in fact, that the prosecutors orchestrated events and that they were making conscious decisions here about whether to notify the judge and allow the release of the witnesses. In effect, what they are arguing is that there was an abuse of process by the prosecutors concerning the use of the material witness procedure. Now, they're certainly allowed to argue that and to make an issue of it for purposes of liability. But that argument contradicts their claim for purposes of immunity. Because for purposes of immunity, it's not the prosecutor's motivation that counts, as this court has held on numerous occasions. It doesn't matter whether the prosecutor allegedly acts maliciously. But what it proves is that this was indeed a prosecutorial act that is being alleged. The major premise that we must discuss here is whether the failure to notify the authorities of his continued detainment was, and I'm quoting now from Imbler, intimately associated with the judicial phase of the criminal process. That's Imbler. And that seems to run through all the cases. Now, we're talking about judicial phase. Here is a criminal prosecution that has ended. And I'd like you to help me to show where a case has ended, how can this be considered part of the judicial phase of that case? Well, let me clarify one thing, Judge Aldiser. The case had ended, at least arguably, in only one of these two cases. And while in that case the plaintiff's counsel had made argument about termination of the prosecution being the crucial event, that principle would result in the loss for the other plaintiff because her case was clearly proceeding still at the time when the prosecutor allegedly intentionally kept her in custody. But the larger point, I think, Your Honor, is this. And that is that, as to every prosecutorial act, there are mechanics that go along with it. And you can't separate those out when you're looking at the immunity question. In fact, every case— Indeed, I think the contrary is true. The judge, the court has to separate those functions in every issue where this issue is presented, whether it's administrative or whether it's part of the judicial process. Well, Your Honor, certainly the function of procuring and maintaining material witnesses has to be separated from the function, for example, of employing secretaries or advising the police before charges are even filed. Obviously, in that sense, we must distinguish between functions. But once we've identified a prosecutorial function, such as procuring material witnesses, that's the point at which we can't subdivide into the mechanics that are involved in carrying out that function. Because if we did that, then even those functions which are clearly core prosecutorial functions would also be subject to suit, and there would be no immunity. And in fact, the cases involving a situation like ours, that is, where the prosecutor allegedly fails to give required notice, even at the conclusion of a case, have all recognized absolute immunity. The Fifth Circuit case, for example, Brooks v. George County, was one where the DA failed to serve a null process of the charges. The case was over, but he didn't serve it properly, and the defendant spent an extra eight months in jail. The First Circuit, in the Guzman-Rivera case, the DA, the prosecutors conducted an investigation proving, after trial, that the defendants were actually innocent, but they didn't tell anybody. The defendant spent extra time in jail. In the Pusey case from the Sixth Circuit, the prosecutor entered into a guilty plea agreement with the defendant, but failed to carry out his statutory obligation to notify the victim in that case beforehand. I take it you are arguing, because all these cases are fact-specific. I take it you are arguing that anything that an assistant district attorney does is protected. Is that what you're arguing? Absolutely not, Your Honor. The premise of the argument is that the DA... What is being done? Yes, Your Honor, and our argument is that what is being done here is the getting and keeping of material witnesses, and that the little so-called administrative acts that accompany that function cannot be separated from the function. The kind of functional analysis that Your Honor is talking about might require us to determine, if it were a matter of first impression, whether securing and keeping material witnesses was a prosecutorial function, but that premise is one that is acknowledged even by the other side and has been, in fact, upheld by many other courts. Let's talk about this case. The argument is Malone's failure to take any steps to have him released from custody, knowing that he was no longer needed as a witness in the underlying criminal case. Here, what function had Malone have to do? All he needed to do was to notify somebody. Notify somebody. That's an administrative or ministerial act that his witness was in jail and no longer needed. Isn't that what this case is all about? Well, that's obviously the plaintiff's allegation, Your Honor, but we say that that's not what this case is all about because there are any number of small steps that are necessary to carrying out any prosecutorial function, and the reason that we cited the case we did. All right, let me ask you this. Let's say instead of being there for, how long was he there, a month? Yes, Your Honor. Let's say he was there for a year. Well, then you would at least begin to get into factual questions about whose responsibility that really was. But there's another factor here, and by the way, the reason I mention these particular cases, of course, all are fact-specific. The cases that I've mentioned are more fact-specific to this case than the other cases, and that's why they're relevant. But there's more involved here even than in those cases because it's not really true that this prosecution was over if the defendant had been acquitted or convicted. All that happened was it was dismissed for lack of evidence without prejudice, and we could re-arrest at any time, and Pennsylvania Rules of Criminal Procedure, Rule 544 specifically, clearly provides that we could re-arrest. So the prosecutor could have attempted to keep the witness in custody pending re-arrest, or, for example, he might have argued to the judge that the witness should be in custody because by failing to comply with her court order requiring his appearance, he committed contempt of court. And in fact, the other witness in this case, the only other witness in this case who also refused to testify, was held in contempt earlier in this very case by the same judge. Those seem to cut against you because there, judicial intervention is required before the person is taken into custody. Isn't the problem here that the jurists in both cases wanted the people released, in fact, effectuated their release immediately upon notice? So the danger, it seems to me, is that here the prosecutor is deciding who stays in jail and for how long. That happened in all the cases that I've cited to you also, Your Honor. I think it's very important for immunity purposes to distinguish between what wound up happening here and even what the judge's reactions were here and what the function is. The fact that the prosecutor could have taken a variety of positions which may or may not have been accepted by a judge doesn't take the case out of immunity. In fact, it would be irresponsible to release someone from jail without, for example, checking on their other things that might be holding them, other charges, et cetera, that might be out there. And although the person here was a witness, it's certainly not uncommon for witnesses in our criminal cases to have their own records involving perhaps detainers or violations of probation in other cases. Well, if you want to get into all that, it seems to me qualified immunity is sufficient to protect your clients. Why isn't qualified immunity really what we're talking about here is the difference between absolute and qualified? There's always going to be at least qualified immunity, Your Honor. But the problem is that in a case, especially one where it's acknowledged, that the function of procuring material witnesses is subject to absolute immunity. It's not proper to then say, well, because of the manner in which the prosecutor carried out or didn't carry out that function, he therefore loses immunity. In that case, the result of the immunity question would be turning on the merits of the liability question. And that can't be for purposes of the immunity question. It can't matter for purposes of immunity. And this court has held that the manner and motivation of carrying out the function is irrelevant to whether immunity exists. It can't be that what matters is whether the prosecutor, whether the judge really wanted to let them out, for example. I agree with you with respect to procuring material witnesses, but it seems to me there's an important distinction between procuring them and letting them go, especially when a case is terminated. When a case is terminated, it seems to me, as Judge Althusser has indicated, how can there possibly be any prosecutorial function once the case is over? Well, at the very least, then, that means the other plaintiff loses under that approach. But even as to the plaintiff in the case where charges were dismissed on that day, as I've said, Your Honor, that didn't end the case, really. And there's an allegation in the briefs that discovery in this case has proven that the prosecution here is dead. Well, that's improper as outside the complaint, and it's also false as a matter of law. When charges are dismissed without prejudice for lack of evidence, it's not because here we don't know who did it. It's not because we don't think we have the evidence. It's because the witnesses have so far refused to come to court. And it's appropriate at that stage for the prosecutor to address with the court what is the proper disposition of that witness given the possible future of this case. Mr. Eisenberg, was there anything that your office had to do in either of these cases other than pick up the phone, call the judge who ordered the arrest of the two witnesses? Well, not according to the allegations in the complaint. But, again, it's not the ease of the conduct which determines the immunity question. And that's why it's so important, and I acknowledge difficult in these immunity cases to separate the immunity question from the liability question. And that's why I point to some of the cases that I've mentioned where all the possible I'm not asking for that reason. I'm saying would the release of the material witness have been effectuated by a phone call or is there a necessity to file at least some petition with the court? What's the practice? The court would have had to make some decision at that stage about what to do. And there would have been questions. There legitimately would be questions at that stage about what to do in both of these cases. Certainly in the case that was continuing, the prosecutor might well have said, I know it's been continued, but I think you should keep her in anyway because I really need her and she should stay until the continuing state. The issue here, the absolute immunity question is rare. The granting of absolute immunity is something that the Supreme Court has granted very few times in very few instances. Aren't we required to look at the Burns case refers to certain factors. Aren't we required to look at what the common law basis for the absolute immunity would be? What would the common law basis or the historical basis be for granting immunity to prosecutors in cases such as this, which probably in themselves would be rare? Well, there's not really a common law on the exact kind of fact pattern that's at issue here. But I think what's instructive about the Burns case is really the holding there, which was that even though the prosecution hadn't even started yet, charges hadn't even been filed, the prosecutor still had absolute immunity for what he did at the probable cause hearing to get a search warrant. Now, it didn't matter what happened with that hearing. It didn't matter whether we won or lost. It didn't matter whether the judge said there's absolutely no probable cause. What are we doing here? It didn't matter whether he got the search warrant and didn't serve it. It didn't matter whether he served it and then wound up not charging the defendant. All that mattered was that that function was preparatory to beginning the case. And in the same way that acts before the beginning of the case, before the technical instant of the beginning of the case, can be subject to absolute immunity, so can acts that occur beginning within seconds of the end of the case, of the dismissal of the case. Okay. Anything else? Judge Alliser? No. Thank you, sir. Mr. Eisenberg, we'll have you back on rebuttal. Thank you. Mr. Silverman? May it please the court, my name is Dan Silverman. I represent the appellee in the Odd versus Malone case and the appellant in the Schneider versus Smith case. And in my capacity as counsel for the appellant, I would like to reserve five minutes as well. I'm not so sure we're going to grant that. That request will be denied. I don't think it's much of an exaggeration to say that by extending immunity in this case to this new situation, the court would be granting prosecutors the power to decide when material witnesses remain in jail or when they are released. And I don't think it's an exaggeration to say that by extending immunity in this case, the court would be stripping judges of the power to hold hearings, to decide the question of whether or not a material witness would be released. Mr. Eisenberg delineates the function at issue here too broadly. He, in my view slyly, suggests that the function at issue, and I quote, is getting and keeping material witnesses. If that were the function, under Mr. Eisenberg's thinking, a prosecutor who threatens a witness to appear would be immune. Because after all, that's related to procuring and getting a witness to come to court. Under my adversary's thinking, if a prosecutor advised police to do an unlawful seizure of a material witness, under his thinking, that would be immune. That would be absolutely protected from lawsuit. And it's not under United States Supreme Court precedent. When you define the issue as broadly as anything related to the procuring and keeping of material witnesses, then that immunizes a whole lot of behavior that's not immunized. The function at issue here, as some members of the panel have determined already, is specifically did the prosecutor have a duty to notify either Judge Means, either Judge Nyfield, court administration, the prison system, just pick up a phone and simply notify somebody, hey, there's a material witness in custody that's either in my case no longer needed at all or in the Schneider case no longer needed for another four months. I, as the prosecutor, still reserve the full right to advocate that either of those witnesses should remain in jail. And there's nothing in my argument, in either of these claims, that would strip the prosecutor from making that advocacy, litigation-related argument. Mr. Malone certainly had the right to get up there and say, for whatever reason he could come up with, why Mr. Ott should stay in jail, and Ms. Smith the same with her. But they had no right, and nor should you protect them by granting them immunity, to keep a judge from ever reaching that issue. Since when is it a core prosecutorial function to allow a prosecutor to decide when someone stays in jail? It's not. That's a judicial function. And by extending immunity in this case, you effectively say to these two prosecutors, it's okay that you acted like the judge. It's okay that you took on this judicial function. We're going to allow that to happen. And I suggest to you, nothing in the facts and nothing in any of the cases will suggest that that's what you should do. The issue down back in the Philadelphia court system, as to these two witnesses that were in custody, the issue before those courts was, should this witness be released, or should this witness remain in custody? For a prosecutor to stand up and say, yes, this witness should remain in custody, is advocacy. But that's not what we're dealing with. What we're dealing with is the administrative, ministerial step of simply notifying somebody. And the reason that I can say with some assurance, and ask you to accept with some assurance, that that is an administrative step, is because court administration, court administration, could have done this.  And then the prosecutors could have come in and advocated any position they wanted. The prison system could have taken care of this. The sheriff's office could have taken care of this. We didn't need a DA. It's not the advocacy function to simply schedule a hearing or to notify somebody that this situation existed. Now, I alleged in my complaints, more specifically in the Schneider case. Let's just stop at that point. But I think what you've portrayed here is that any number of people could have effectuated Mr. Odd's release or Ms. Schneider's release. I'm not saying that. Any number of people could have effectuated the convening of a hearing. Any number of people could have effectuated the convening of a hearing. That's correct. And obviously, until the court entered an order, neither of them would have been released. That's correct. Okay. In these cases, your clients have chosen to sue the assistant DAs who were involved with the prosecution. There's a specific reason for that, Judge. Okay. Without getting into that specific reason, as far as they're concerned, don't they have the right, or shouldn't they have the right, to claim, to the extent that that function was theirs, that they should be granted absolute immunity? What I think the panel needs to bear in mind, that Judge Du Bois did not bear in mind when he granted the one motion to dismiss in the Schneider case, is that you have to look at the specific facts of what goes on in the Philadelphia court system. I specifically mentioned in the Schneider case, specifically in the Schneider case, generally in the odd case, that what goes on specifically in Philadelphia is this district attorney's office requested and received the authority from court administration to have exclusive control over the issue, any issue dealing with material witnesses. They asked for that, and they got it. And I would like the opportunity to go back and conduct some discovery on that, to prove that this function of notifying the court system, or sheriff's office, or the prison system, when a witness has a custody issue that needs to be addressed, I'd like the opportunity to prove that that's an administrative function. Let me ask you this question. I guess I don't understand the statement you had made, which prompted the inquiry by Judge Fischer. How could the sheriff, what authority would the sheriff have to notify the court? What authority would the prison officials have? This was something that was initiated by the district attorney's office. How could these other people, how could they do anything? What is there in the mechanics that have the prison or the sheriff to initiate something? I don't understand that. Allow me to answer that question in two parts, Judge. Number one, practically speaking, Your Honor probably knows yourself that with the prison overcrowding situation in Philadelphia, the prison system assigns a specific person to check the rolls every day to see who might be eligible for release because they're charged with certain minor offenses or they have violations of the probation and things like that. So easily, the prison system could have had in place some sort of monitoring system for any material witness in custody and thereby cross-reference, oh, the case in which this witness is going to testify ended on February 5th. Okay, it's February 6th. Let's see if we still need this witness. Practically speaking, that's a very easy thing that could have been done. Same with court administration and the sheriff's office. It's simply a question of tracking witnesses that are in custody.  because the district attorney's office said, we don't want those other institutions getting involved. We want this baby for ourselves. Anything to do with material witnesses, no matter what it is, has to go through us. And therefore, Judge Allison, the really important part of my answer to your question is those other branches of the court system and the sheriff's office and the prison system all relied on the district attorney's office. They would not lift a finger to let either of these material witnesses out of custody. They wouldn't have lifted a finger to even schedule a hearing without going through the district attorney's office. That's what I allege, and I'd like the opportunity to prove that in discovery, as opposed to having my client's case cut out for one of them by a lower court decision to grant a motion to dismiss before any discovery is taken. Let's suppose that in this case, instead of suing the assistant district attorneys, that your client directed you and you followed your client's directions, he directed you to file suit against the two judges, the one who dismissed the case in which Mr. Rod was involved and the one who continued the case in which Ms. Snyder was involved. They would have absolute immunity, judicial immunity for their function as judges making a decision in the case. All right, but in this situation, they would not have made any decision. I have to assume that amongst the papers that the judges had in front of them would have been noticed that there was a material witness warrant and an incarceration of a material witness. Even the judges rely on the prosecutor's office. You're talking about a systematic issue that you're attempting to address. What I'm trying to give you is a hypothetical to compare it to as to whether or not the judges, if you had sued the judges, would be entitled to absolute immunity for not performing a ministerial function. Well, I'm not sufficiently familiar with the ins and outs of judicial immunity having never been considered. It came from the same foundation. Suffice it to say it came from the same foundation, a slightly different case. What I know is that in this circuit, this panel is required to do what Mr. Eisenberg suggested it not do, which is to get very specific and very meticulous in its analysis to scrutinize the actual function that's involved. And for Mr. Malone or Ms. Smith to simply say, I'm not going to let any judge get near this case, I'm not going to let a judge get near this case, is not a core prosecutorial function, period. There's no discretion involved in the challenged function we're going after. There's no discretion involved. There may be in the analogy that Your Honor raised. But in this case, they were required under their own office's regulations, they were required under Judge Means' directive, and they were required under this policy that I'd like the opportunity to prove having adequately pledged in my complaint, they were required to notify somebody. And that's all this case involves. And so what I would ask the court to do at this point is to bear in mind some of the standards that guide this court. Aside from the fact that absolute immunity is extended in rare cases and should be done very sparingly, qualified immunity, there's a presumption in the law that qualified immunity is enough, there's no reason why we can't go back and fight that issue out at some point, that the function at issue must be so sensitive, that's the Supreme Court language, so sensitive, so intimately associated with the judicial process as to require an absolute shield of protection. I ask the court to remember the posture that this case is reaching the court in. This is from decisions on the motion to dismiss, and I believe that certainly the court knows the standards that govern that. They need to show beyond all doubt that there is no set of facts on which we can prevail. As I understand your argument, Mr. Silberman, you're saying that for its own convenience or its own benefit in prosecuting its cases, the Philadelphia District Attorney's Office arrogated unto itself this administrative benefit of controlling the flow of material witnesses. That's correct. And you're also saying that they should suffer the burdens of having arrogated unto themselves that administrative function. When they fail in their ministerial duties, yes. When they fail in their advocacy functions, no. And if they don't like it, then they can relinquish that function and bring it back to the sheriff's office or the prison or the court administration. Okay. Another question is in Buckley v. Fitzsimmons, the Supreme Court indicated that a prosecutor can be absolutely immune from making out-of-court efforts to control the presentation of a witness's testimony. That's a direct quotation. That's pretty strong language.  I agree with the language. I think that's been consistently held by other courts as well. I don't see this case, the facts of this case, as being – I forget the exact language that the court just quoted me, but I don't see that as being intimately associated with an issue of function. Counsel, let me give you a quote from Buckley that I think is very apt. My colleague presented that statement. This is on page 509 at 273. A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity. Seems that's right on point. I'm simply saying that I think that has to be considered as well. In the limited time that I have left, I would just ask the court on the odd case. There's the termination of the underlying criminal case, and I in all candor to the court would say that I actually don't think that the termination of proceedings in and of themselves equals no immunity. I think that there are situations where when the underlying criminal case is terminated, that there may still remain an advocate's function that a prosecutor could perform. I don't think it's involved in this case, but I do think that that is a possibility. By the same token, in connection with the Schneider case, the mere fact that the underlying prosecution is still pending doesn't mean that anything they do is an advocate. And the courts are very clear about that. You look at the specific function itself. You don't look at just the timing of the function. And I do think, however, that the timing of the function is a very relevant factor as it relates to whether or not the prosecutor is performing an advocate's function or an administrative function. So with respect to the Schneider case, the specific error that I thought the district court made was on page 7 of its opinion when it says, in this case, the nature of the activity in question was to secure the presence of a material witness at trial. And I suggest to the court that that is repeating the same mistake that Mr. Eisenberg made, which is to define the issue overly broadly. When this court's jurisprudence dictates that we are to scrutinize and be meticulous about what the function is in question, when the Supreme Court's language is that you have to look at the particular function in question, this function we're dealing with here is not simply to secure the presence of a material witness at trial. This function was to notify somebody that there was a material witness in custody whose custody status needed to be addressed somehow. Well, thank you for your time, Mr. Seldin. Thank you very much. And on rebuttal, we will call Mr. Eisenberg. And if you feel compelled to address something that Mr. Eisenberg addresses on the Schneider case only, I may consider giving you that rebuttal time. Thank you, Your Honor. My opponent argues that we are trying to strip the court of a judicial function by hiding the fact of the question of whether the witness should be released. But even in an actual charge of directly hiding something from the court, for example, where the prosecutor allegedly hides evidence, there's no response to immunity by saying, oh, you've hidden something from the jury that will keep them from making the decision at all. You have prevented them from even making the decision. Hiding evidence by a prosecutor or any other action which keeps the judge from making a decision does not take the function out of absolute immunity. Now, Your Honor, Judge Fischer, you asked what if the court system had taken on this function itself. Wouldn't the court system, what would be the liability of the court system? And ironically, although Mr. Silverman says, well, clearly the courts would be immune for that, the exact same function which is supposedly delegated by the courts, the allegation is that the courts tasked it to the DA's office. It's not that the DA's office stole it for themselves or irrigated it. The allegations in the briefs and in the complaint are that the court assigned it to the DA's office. And whether we accepted it is, I suppose, something that could be debated. But the allegation is that there was, in effect, a local rule that required the DA's office to do this. Now, to the extent that that is like the function that the court could have done itself, then clearly there should be immunity for it. And, in fact, if the kind of theory that is being proposed here were allowed, it would be used in future cases to chip away at all sorts of absolute immunity, not only that possessed by prosecutors, but that possessed by the judiciary as well. Haven't we already done that, though? Chipping away, that is? I mean, in rights, our 1997 decision in rights, I believe we held that there was no immunity simply because of the delay in returning seized property. And that's a prosecutorial function, right? To gather evidence, to effectuate seizures of property. And we held that the violation of that court order resulted in no immunity. Here, in the Schneider case, you've got a violation of court order. Well, Mr. Silverman has already conceded in his last brief that the violation of a court order in itself is not the basis of his argument because we cited cases to the court in our brief where, despite the violation of a court order or the violation of a court rule, DA's were still held absolutely immune for failing to give required notice. And the cases I discussed in my earlier argument all involve requirements of giving notice that DA's allegedly, at least, failed to comply with. All right, but how do you distinguish Schneider from rights? Why, if we're going to be faithful to rights, as we must, how do we go your way here? All the property cases, I would say, Your Honor, are a different sort of thing than here. They're less important? As the authority that the rights case relied on, the Schwab case earlier from the circuit set, the property cases are a gray area when it comes to absolute immunity. Isn't that weaker, though? If you and I had a choice between having our property returned 50 days later, being stuck in jail 50 extra days, it's pretty clear we'd choose the former. That, again, is really an issue that goes more to liability, Your Honor. Of course, you could say that you'd really rather have the prosecutor have absolute immunity for property issues than for hiding evidence in a trial. What could be worse than putting perjured testimony on in the middle of a trial? But it's not how bad the conduct is that relates to whether there's absolute immunity. And all the property cases are separate from these kind of cases because the management and retention and treatment of property is more analogous to the physical conditions of custody when you look at the situation of witnesses. In other words, if this witness or defendant were mistreated in prison, he could sue, and to the extent that we allegedly have responsibility for his custody, for his upkeep there, we wouldn't have absolute immunity for that. The same is true with property. Now, Judge Oldenstern, you mentioned the Buckley case, but as I think Mr. Silverman acknowledged, the mere fact that the prosecution hasn't started yet or has ended is not really dispositive. Buckley involved a situation before trial, but many, many courts have held that Buckley, in no other Supreme Court case, stands for the proposition that immunity automatically terminates at the conclusion of trial. And many cases have applied immunity even to acts that occurred after the end of trial or after the dismissal of cases. That's why it's so important to look at the function and not to pick it apart the way that the plaintiffs are here. And that's what the other courts have done in cases very similar to this one. Thank you. I'm sorry, one more question. Mr. Eisenberg, why should we not consider your appeal as to your state law claims waived since you only made reference to them in a footnote? I'm sorry, I'm not sure. The false imprisonment and the intentional infliction of emotional distress claims. In which case, the Schneider case or the odd case? In the Schneider case, Your Honor, the plaintiff withdrew all other claims except for the ones coming up on this appeal. In the odd case, the lower court stayed in action on all other claims except for the ones coming up on this appeal pursuant to the immunity. So in both cases, the cases were, I think, carefully limited for purposes of the appeal. Do you agree, Mr. Steinberg? I don't, but I'm not sure it's a distinction of great importance. In the odd case, the lower court severed the state law claims. Excuse me for one second. In the odd case, the district court severed the state law claims, so they've just sort of been on hold. In the Schneider case, I did not withdraw any state law claims. I simply withdrew the Monell claim under Section 1983 against the office itself so that this appeal could proceed. Okay. Are you satisfied that you had enough time to respond to whatever Mr. Eisenberg said? Yes, sir. Thank you. Okay. Thank you. We thank both counsel for an excellent job, and we'll take the matter under advisement. Berge, we'll be right back as soon as the courtroom is cleared. Thank you very much. Thank you.